## COLMAN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. March 20, 1895.)

### No. 218.

DISTRICT ATTORNEYS—COMPENSATION FOR EXTRA SERVICES.

A district attorney, who, by special direction of the department of justice, rendered services in proceedings brought against the United States under authority of the act of congress of March 3, 1875, to recover damages caused to lands by the improvement of the Fox and Wisconsin rivers, is precluded by Rev. St. §§ 1764, 1765, from recovering extra compensation therefor. These proceedings, though of a special statutory character under the Wisconsin laws, were yet, after transference to the federal court, to be regarded as "civil actions," which it is a part of the attorney's regular duties to prosecute, under Rev. St. § 771. Gibson v. Peters, 14 Sup. Ct. 134, 150 U. S. 342, followed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

This was a petition by Elihu Colman against the United States to recover compensation for special services rendered under the direction of the department of justice during his term of office, and while serving as United States district attorney for the Eastern district of Wisconsin. The circuit court dismissed the petition without prejudice to a claim for an allowance of taxable fees, and the petitioner appealed.

The claims in controversy are predicated upon four different matters of special employment, are not made in conformity with the fee bill or supported by any express appropriation, and are as follows:

(1) For an action in equity (United States v. Winnebago Paper Co. and thirty-six other defendants) in which the bill was filed in 1886, in the name of the United States, by a special attorney appointed by the department of justice, to restrain the drawing of water below certain points at the dams at Neenah and Menasha, for the preservation of navigation on the Fox river improvements, wherein the petitioner alleges that he rendered services for the complainant, by direction of the attorney general, of the value of $375, and incurred a personal expense of $7.30. The bill is certified by Judge Jenkins, of this court, as reasonable in amount, without passing upon the validity of the claim. The attorney general approved, after deducting $75 from the account of services.

(2) For services rendered by the direction of the department of justice, through request of the war department, for an alleged trespass in cutting through the embankment of a lock at Appleton, which was the alleged property of the United States, in charge of the war department, and wherein an ejectment suit was instituted in this court in behalf of the United States against the Manufacturers' Investment Company. The claim is for $150 for four days' work, and assisting the special assistant United States attorney in an argument of demurrer to answer, and personal expenses, $3; certified by Judge Jenkins as reasonable in amount, without passing upon its validity. The attorney general deducted $25, and approved the balance.

(3) For services pursuant to the direction of the department of justice, under date of September 4, 1891, assisting the special attorney of that department in the preparation and trial of Paine Lumber Co. v. U. S., 55 Fed. 854, being an appeal from an award by commissioners in a state court for damage by flowage occasioned by dams maintained by the United States (under an act of congress for that object), and removed into this court. This is alleged to have been adopted as a test case, and occupied 23 days in preparation (well shown) and 18 days in trial and argument, and accomplished a large reduction in the award, and favorable settlement of other claims upon its basis. The bill for services, predicated on the customary professional charges, is placed at $3,000, and hotel expenses are added, $43.50; making the total, $3,043.50. It bears a certificate by Judge Jenkins that "$2,500 would be a reasonable charge for services rendered and the result obtained." The department of justice deducted $1,000, and approved the balance. Competent witnesses testify that the reasonable value of the services would be $5,000, in view of the result accomplished, and under assumptions of fact all of which are undisputed.

(4) Services rendered, in conjunction with the special attorney, in settlement of a large number of similar cases (enumerated, and indicating large saving from previous awards), for which the charge is $500. There is no approval by the court, and the department of justice deducted $250, and approved the balance.

These claims were all disallowed by the first comptroller, for the reasons stated, and with remarks as follows: "That such charges do not come within any provision of law. In each of the several cases enumerated in account the United States is a party of record, and the fees therein are taxable only in accordance with sections 823 and 824, Rev. St. Even if the United States was merely an interested party in these cases, and not a party of record, under section 299, Rev. St., fees for services therein should be assimilated to those provided by law for similar services in cases in which the United States is a party."

In the circuit court the following opinion was rendered by SEAMAN, District Judge:

"If these several claims could be adjudged upon the showing of meritorious and beneficial services rendered by the petitioner by direction of the department of justice, there could be no reasonable question of their allowance to the amount claimed in the petition. But the services were all rendered in matters in which the United States was a party, and immediately interested, during the petitioner's term of office as district attorney; and it is clear that there can be no recovery for such services beyond the allowances provided by statute. Section 1764, Rev. St. U. S., provides that 'no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform unless expressly authorized by law.' Section 1765 prohibits any officer whose salary, pay, or emoluments are fixed by law or regulations from receiving 'any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.' Section 770 fixes the salary of the district attorney. Sections 823 to 827 prescribe the fees which may be allowed, and there is no contention that warrant can be found in either of these sections for the claims here presented. The only statutory authority which is suggested is chapter 166 (18 Stat. 506). That is the provision for possession and improvement of the Fox and Wisconsin rivers, and for pay-

ment of overflow damages, and authorizes the department of justice to 'represent the interests of the United States in legal proceedings under this act.' It is understood that the appointment of the special attorney (who was here assisted by the district attorney) was made and his compensation allowed under this statute, but there is no suggestion in it of special compensation for the district attorney, and it furnishes no aid for the claim.

"It is further suggested by the petitioner that his services in the flowage cases are not covered by the fee bill, because section 824 only provides for fees in a 'civil cause' or 'case at law,' and these proceedings, which are made by the act conformable to the state statute for condemnations, and governed by the rule of the state of Wisconsin, are expressly declared to be 'special proceedings,' and are not actions at law. Cornish v. Railroad Co., 60 Wis. 476, 19 N. W. 443. Decision of this point is not necessary, for the reason that an adoption of this view, holding section 824 inapplicable, would not furnish ground for the claim, as no provision would remain for any compensation beyond that contained in section 770, which prescribed the salary of the district attorney. However inadequate this may be for such services, it is well settled that public officers take their offices cum onere. As stated by Dixon, C. J., in Crocker v. Supervisors, 35 Wis. 284: 'Any services required of them by law, for which they are not specifically paid, must be considered compensated by the fees allowed for other services.' If it was the duty of the petitioner, as district attorney, to perform the services, either upon direction of the attorney general, or because the matters were 'civil actions in which the United States are concerned' (section 771, Rev. St.), the general rule must apply, and limit the compensation to that which is prescribed by the statute. If the services were not such as are per se imposed upon the office of district attorney, they were in fact so rendered, and sections 1764 and 1765 preclude any compensation 'unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.' There is no pretense of any statutory allowance for the claims here made, and they are clearly barred by the interpretation placed upon the several sections above cited in Gibson v. Peters. 150 U. S. 342, 14 Sup. Ct. 134. It is there held: 'Congress evidently intended to require the performance by a district attorney of all the duties imposed upon him by law, without any other remuneration than that coming from his salary, from the compensation or fees authorized to be taxed and allowed, and from such other compensation as expressly allowed by law specifically on account of services named.' And the purpose is further stated that the United States was not to be subjected to any rule for reasonable compensation which applied to private suitors, or 'any system for compensating district attorneys except that expressly established by congress, and therefore to withhold from them any compensation for extra or special services, rendered in their official capacity, which is not expressly authorized by statute.' I am well convinced of the entire merit of these claims, aside from the want of statutory authority for their allowance, but am constrained to hold that this objection is fatal. The petition does not contain specifications which would enable an allowance of taxable fees, if that were desired. It must, therefore, be dismissed, but without prejudice to a claim for such allowance. Findings are filed herewith in accordance with this opinion."

Elihu Colman, pro se. (Thomas Milchrist, of counsel).

J. H. M. Wigman, for the United States.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge. The appellant, Elihu Colman, was district attorney of the United States for the Eastern district of Wisconsin from February 6, 1890, to April 24, 1893. In September, 1891, he was instructed by the department of justice to co-operate with Albert E. Thompson, who had theretofore been appointed a special assistant attorney general, in the management of the flow-

age damage cases against the government pending in the United States circuit court for the Eastern district of Wisconsin. The cases referred to had arisen under the act of congress of March 3, 1875, whereby the owners of land or property adjacent to the Fox and Wisconsin rivers were allowed to bring actions against the United States for damages caused by the improvement of those rivers by the government. Of the cases brought and pending in the court of the Eastern district of Wisconsin when the appellant was directed to aid in their management there were about 150. The sums claimed amounted to $231,818, and in most of the cases awards had been entered, which aggregated $127,468. The appellant, in obedience to instruction, assisted in the preparation for the trial and in the trial of a test case, and in the settlement and disposal of the other cases except three, which remained pending when he quit office, involving not more than $500. The judgments obtained against the government in the cases disposed of had been reduced below the awards to the sum of $36,171.34, which result, it is alleged, was largely due to the skill and labor given to the management of the cases by Thompson and the appellant. The test case was the case of the Paine Lumber Company, Limited, against the United States (55 Fed. 854), in which the demand was $100,000, the award $65,621, and the trial, which lasted more than a month, resulted in a verdict for $5,588.34. Besides the damage flowage cases, but, it is alleged, directly connected with them, were two other cases under the charge of Thompson, in the preparation and trial of which the appellant assisted, namely, the case in equity of the United States against the Winnebago Paper Company and 36 other defendants, involving the rights of the parties in the flowing water of Fox river, and the case in ejectment of the United States against the Manufacturers' Investment Company. Accompanying the complaint or petition of the appellant are bills of particulars of the services rendered and expenses incurred in each of these cases, the total charge for services being $4,000, and for expenses $78.80. It is alleged that the attorney general had allowed the claims to the amount of $2,708.50, but that the comptroller of the treasury had refused to allow any part of them. The court found specially (1) that the services were duly rendered as alleged in the petition, but were in pursuance of his office, and during the term of office of the petitioner as district attorney; (2) that the services in the flowage cases were rendered under the direction of a communication from the department of justice, accompanied by a letter of request therefor by A. E. Thompson, copies of which are set out in the finding; and (3) that the services stated in the petition were reasonably worth the amount claimed in the petition in each of the matters therein set forth, upon the basis of the customary professional charges for such services. As matter of law the court found in substance that the United States was not liable to the appellant for the value of his services, but only in the amounts provided by statute for such services. We concur in that conclusion. Statutory provisions pertinent to the subject are collected and considered in the case of Gibson v. Peters, 150 U. S.

342, 14 Sup. Ct. 134. Section 770 of the Revised Statutes fixes the salary of a district attorney, and section 771 makes it his duty "to prosecute, in his district, all delinquents for crimes and offenses cognizable under the authority of the United States, and all civil actions in which the United States are concerned." Sections 823 to 827, inclusive, prescribe the fees which shall be allowed to district attorneys "in civil or criminal cases," "in cases of admiralty," "in cases at law," and for other specified services, and that "no other compensation shall be allowed them." When these provisions are construed, as in Gibson v. Peters it is declared they must be construed, in connection with sections 1764 and 1765, which forbid compensation for "extra services" and "extra allowance or compensation, in any form whatever," "unless the same is authorized by law," there can be no doubt of the right conclusion. The contention of the appellant is that the services in question were rendered by virtue of a special statute, which provided that the department of justice should represent the interests of the United States in legal proceedings under the act, including flowage damage cases (18 Stat. 506, c. 166); that this act, unlike section 380 of the Revised Statutes, under which the case of Gibson v. Peters arose, did not require that the district attorney should have charge of the cases arising under it, and that the cases were not "civil causes," or "cases at law," for which docket fees are allowed by section 824, but special proceedings under the Wisconsin statute for the assessment of damages. It may be conceded that in the state court the proceeding for the assessment of damages was a special proceeding, as distinguished from a civil cause or case at law, but on appeal, which either party was entitled to take, and certainly in the federal court after transfer, "the proceeding," to use the words of the supreme court in U. S. v. Jones, 109 U. S. 513, 517, 3 Sup. Ct. 346, "so far as the ascertainment of compensation is concerned, takes the form of a regular action at law, in which the petitioner becomes the plaintiff and the contestants the defendants." The damage cases, therefore, from the time the appellant was directed to cooperate in them, like the case in equity and the action in ejectment, were "civil causes" or "civil actions" in which the United States was concerned, and which it was a part of the appellant's official duty to prosecute or defend. It has been suggested that, in any event, the appellant ought to recover his expenses, but, as the court made no finding in respect to the items of expense, the question is not in the record. The judgment of the circuit court is affirmed.